UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STUCCO AND CONSTRUCTION MATERIALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRANS-NET, INC., a Washington corporation, <br><br> Defendant. | CASE NO. C08-1299RSM <br><br> ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of defendant's motion for summary judgment, Dkt. # 63. Plaintiff has opposed the motion. The Court has fully considered the parties' memoranda and exhibits and for the reasons set forth below, shall grant the motion.

FACTUAL BACKGROUND

This case arises from damage to a shipment of 684 pails of acrylic polymer that were transported in a container from Knoxville, Tennessee to Odessa, Ukraine in May and June of 2008. Plaintiff Stucco and Construction Materials, Inc. ("SCMI") filed this action pursuant to the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.,* ("COGSA") and general maritime law, alleging that defendant Trans-Net, Inc., ("Trans-Net") failed to properly transport and deliver the cargo in good condition. Trans-Net now moves for summary judgment, asserting that plaintiff can not meet its burden of proof on the

ORDER ON MOTION - 1

evidence available in this case. In opposition to the motion, plaintiff has filed declarations which will be discussed in detail below.

The undisputed facts show that SCMI contracted with Trans-Net, a non-vessel operating common carrier, for shipment of the pails of polymer compound by sea from a container yard in Charleston, South Carolina to a container yard in Odessa, Ukraine. Declaration of Inna Bullock, Dkt. # 65, ¶ 6. Trans-Net also agreed to requisition an empty forty-foot "HQ" container to Perma-Chink Systems, Inc., in Knoxville, Tennessee, where the pails of polymer would be loaded. *Id*. Trans-Net was not involved in actually loading the container with the pails of polymer. Trans-Net did agree to arrange for transport of the loaded container to the container yard at Charleston, and booked this transport with Transportation Specialists, a trucking company. *Id*. The loaded container was picked up in Knoxville on May 9, 2008 and delivered to the container yard in Charleston, South Carolina. *Id*.

The sea waybill issued by Trans-Net indicates that the cargo was to be transported "FCL CY/CY." Declaration of Inna Bullock, Dkt. # 65, Exhibit A. Defendant explains that this means "full container load, container yard to container yard." *Id*., ¶ 8. The container was to be transported by sea by the steamship company CMA CGM. *Id.* The waybill indicates that the container was loaded aboard the vessel *Lahore Express* on May 17, 2008. *Id*., Exhibit A. The final destination listed on the Trans-Net waybill is Odessa, Ukraine. *Id*. Trans-Net was not informed that the container would be transported onward by truck from the Port of Odessa to Kiev, and did not arrange for this transport. *Id*., ¶9.

The container arrived at Odessa and was discharged from the vessel on June 12, 2008. *Id*., ¶ 10 and Exhibit D.[1] The seals were observed that same day. *Id*. On June 28, 2008, the container left the yard by truck for Kiev. *Id*., ¶ 10. On July 2, 2008, after arrival in Kiev, the container was opened and inspected, and the cargo inside was found to be damaged. An expert assessment determined that the buckets of polymer, which had been packaged on wooden trays bound with plastic tape, had "tipped toward the driver's cabin," such that all but twenty-nine of the 684 buckets were damaged, leaking,

---

[1]This document, the "container history" is in both Russian and English.

ORDER ON MOTION - 2

broken, or so badly deformed that they were empty. *Id.*, Exhibit F, p. 4. The opinion of the expert who conducted the assessment was that the damage "happened as a result of an external influence (falling, braking) which have [sic] caused an excessive tipping of the container toward the front wall." *Id.*, p. 3. He or she specifically noted that the container was "filled not to its full capacity with transportation packages containing plastic buckets with lids." *Id.*, p. 4.

Plaintiff filed this action seeking damages from Trans-Net for the damaged cargo. Trans-Net now moves for summary judgment on the basis that SCMI cannot make a prima facie case under COGSA.

## DISCUSSION

### a. Legal standard

Summary judgment should be rendered "if the pleadings, discovery and disclosure material on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

### b. Analysis

By its terms, COGSA applies "to all contracts for carriage of goods by sea to or from ports in the United States in foreign trade." 46 U.S.C. § 1312 (1982). The term "contract of carriage" includes only those "contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as

ORDER ON MOTION - 3

aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or document of title regulates the relations between a carrier and a holder of the same." *Id*. § 1301(b).

Under COGSA, a shipper has the burden of proving that the cargo was damaged while in the custody of the carrier (i.e., loaded in good condition, discharged in damaged condition). 46 U.S.C. §§ 1302, 1303; *American Home Assur. Co. v. American President Lines, Ltd.*, 44 F.3d 774, 777 (9th Cir.1994). Once such evidence has been received, a prima facie case has been shown and the burden of proof shifts to the carrier to establish that the loss came under a statutory exception to COGSA. *Taisho Marine & Fire Ins. v. M/V Sea-Land Endurance*, 815 F.2d 1270, 1274-75 (9th Cir.1987). Sections 4(2) and 4(4) of COGSA provide a number of exceptions to the imposition of liability on the carrier, such as acts of God, acts of war, and other causes arising without the actual fault of the carrier. 46 U.S.C. §§ 1304(2), 1304(4). If the loss does not fall within one of the enumerated exceptions, then the carrier is subject to liability under COGSA.

The evidence presented by the parties in the summary judgment motion fails to establish that the goods were discharged from the ship at Odessa in damaged condition. Plaintiff has presented declarations from two witnesses in the Ukraine, namely the director of Ukr-eksimtrans, the trucking company which transported the cargo from the Port of Odessa to the warehouse at Kiev, and the manager of that warehouse. Declaration of A.M. Komarov, Dkt. # 69; Declaration of B.V. Semenchenko, Dkt. # 70. Both state in their declarations that no damage to the shipment occurred during their companies' handling of the cargo; neither during transport from Odessa to Kiev, nor during warehousing in Kiev; and no damage to the cargo inside the container was observed until it was opened by customs officials. *Id.* Specifically, the director of the trucking company states that

> [o]n or about June 27, 2008, Ukr-eksimtrans received container CAXU 4866960 ("the Container") at the Odessa Commercial Sea Port for surface carriage and delivery in Kiev, Ukraine.
>
> The surface transportation of the Container and all subsequent activities while the Container was within Ukr-eksimtrans' custody proceeded normally and without incident or mishap through delivery of the container to a warehouse operated by Global Logistics. No damage was inflicted to the Container or its contents while the Container was within Ukr-eksimtrans'

ORDER ON MOTION - 4

custody on June 27, 2008 and June 28, 2008.

No reports of any mishap were issued by Ukr-eksimtrans or its personnel. If damage or any other mishap had transpired while the container was within Ukr-eksimtrans' custody, a report would have been issued in accordance with our standard operating procedure. No such reports were issued.

Declaration of B.V. Semenchenko, Dkt. # 70, ¶¶ 2- 4.

Similarly, the manager of Global Logistics, the warehouse, states,

On or about June 28, 2008, Global Logistics received container CAXU 4866960 ("the Container") from trucking company Ukr-eksimtrans at Global Logistics warehouse facility located in Kiev, Ukraine

The storage of the Container and all subsequent activities while the Container was within Ukr-eksimtrans' [sic] custody proceeded normally and without incident or mishap between June 28, 2009 [sic] and June 30, 2008. No damage was inflicted to the Container or its contents while the Container was within Global Logistics' custody.

No reports of any mishap were issued by Global Logistics or its personnel. If damage or any other mishap had transpired while the container was within Global Logistics' custody, a report would have been issued in accordance with our standard operating procedure. No such reports were issued.

While the Container was at the Global Logistics warehouse in Kiev, Ukrainian customs officials opened the container on June 30, 2008 in my presence and the presence of personnel from Sheet & Mech. At that time, we discovered that the Container's contents were damaged.

Declaration of A..M. Komarov, Dkt. # 69, ¶¶ 2-5.

Plaintiff has also filed a declaration of Daniel Johnson, Technical Sales Manager for Stuc-O-Flex International, Inc., the company that loaded the container. Mr Johnson reviewed the company's records for loading of the container, and reviewed photographs of the condition of the container's contents when it was opened in Kiev. Mr. Johnson states that in his capacity as Technical Sales Manager, he is "familiar with the weight and dimension characteristics of the cargo." Declaration of Daniel Johnson, Dkt. # 68, ¶ 4. He further states that he is "knowledgeable based on experience with the force that would be required to move the 21 tons of freight within the container to the degree demonstrated in post-delivery photographs." *Id*. He then concludes,

The movement and damage depicted in the post-delivery photographs could only have been caused by a tremendous force inconsistent with road transit absent an accident sufficient to severely damage the truck. Historically road transit shipments never encounter this type or severity of damage.

ORDER ON MOTION - 5

> It is not surprising that no outside damage to the container was noted at the Port of Odessa or elsewhere before delivery to the purchaser. No outside impact to the container would be necessary to cause this damage. Rather, it could have been caused by its back end falling downwards while its front end remained suspended, or similar mechanism while being loaded on to or unloaded off from the ocean carrying vessel.

*Id.*, ¶¶ 5, 6.

Defendant has moved to strike Mr. Johnson's testimony in ¶¶ 2, 4, and 5 of his declaration as representing expert opinion which he is not qualified to give, and ¶ 6 as pure speculation. Mr. Johnson was never identified as an expert witness and he has never been qualified as such. The foundation for his opinions regarding forces within the container has not been stated. He was not personally present at either the loading or the unloading of the container, so he cannot testify from personal experience. His speculative statement that the damage could have occurred by "the back end falling downward" is contrary to the opinion of the expert who actually examined the cargo and found that the damage resulted from falling or braking, either of which caused excessive tipping of the container toward the **front** wall, not backwards. Further, the Court notes that Mr. Johnson's declaration omits the fact observed by the expert in Kiev, that the container was not filled to capacity. This would be an important factor in the assessment of forces necessary to cause the damage.

The Court finds that Mr. Johnson is not qualified as an expert and his opinions represent mere speculation. Defendant's motion to strike ¶¶ 2, 4, 5, and 6 of his declaration shall accordingly be GRANTED.

The remaining declarations filed by plaintiff fail to meet the burden under COGSA of demonstrating that the cargo was received in good condition by Trans-Net and discharged in a damaged condition. *American Home Assur. Co. v. American President Lines, Ltd.*, 44 F.3d at 777. Since no one opened the container and inspected the cargo at the container yard at the Port of Odessa, where the container was discharged from Trans-Net's care, there is no evidence whatsoever that the damage was present at that time. The declarations of the trucking company manager and warehouse manager fail to

ORDER ON MOTION - 6

create a genuine factual issue as to that crucial point.[2] As plaintiff's failure to demonstrate that the cargo was discharged in damaged condition means that it has failed to make a prima facie case under COGSA, summary judgment shall be granted as to this claim.

Summary judgment shall also be granted as to plaintiff's claim under general maritime tort law. Defendant asserts that this claim is preempted by COGSA and plaintiff has not argued otherwise.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. # 63) is GRANTED and this action is DISMISSED. The Clerk shall enter judgment in favor of defendant in this matter.

Dated this 11th day of February, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[2] The declaration of the trucking company manager also fails to conclusively establish that no hard braking event occurred during transport of the container from Odessa to Kiev, as it is not based on personal knowledge but simply a review of the records. However, the Court's ruling on summary judgment is based solely on the absence of evidence of any damage at the time of discharge, not on the absence of evidence regarding what might have occurred later. The Court declines to apply the "Last Carrier Rule" as suggested by defendant. This maritime rule establishes a presumption of liability upon the last carrier when a through bill of lading is issued. *The Madow Company v. S.S. Liberty Exporter*, 569 F.2d 1183, 1186 (2nd Cir.1978). A through bill of lading is a single document governing the transshipment of goods through the hands of more than one common carrier. *See, e.g., AIG Europe, S.A. v. M/V MSC Lauren,* 940 F.Supp. 925 (E.D.Va.,1996). The trucking company here was not on a through bill of lading.

ORDER ON MOTION - 7